J-S48034-19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ANTHONY REED, | : | |
| | : | |
| Appellant | : | No. 2404 EDA 2018 |

Appeal from the Judgment of Sentence Entered July 24, 2018
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0000287-2016

| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ANTHONY REED, | : | |
| | : | |
| Appellant | : | No. 2442 EDA 2018 |

Appeal from the Judgment of Sentence Entered July 24, 2018
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002951-2017

BEFORE:  BOWES, J., SHOGAN, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:　　　　**FILED OCTOBER 16, 2019**

In these consolidated appeals, Anthony Reed (Appellant) appeals from

the judgment of sentence entered July 24, 2018, after the trial court found

that Appellant committed a technical violation of his probation.  We affirm.

The trial court summarized the factual and procedural history of this

case as follows.

* Retired Senior Judge assigned to the Superior Court

On March 30, 2016, [Appellant] appeared before th[e trial c]ourt and pled guilty [at docket number CP-51-CR-0000287-2016 (287-2016)] to [r]obbery, graded as a felony of the third degree. Per his negotiated plea agreement, th[e trial c]ourt sentenced [Appellant] to [six] to 23 months['] county incarceration plus [two] years['] reporting probation, with parole at minimum to be determined by the prison. [Appellant] was released on parole less than a week later on April 5, 2016.

On November 11, 2016, [Appellant] was transported by the [s]heriffs to Eagleville Hospital. After completing 30 days of drug treatment, [Appellant] was transferred to NHS Fresh Start Recovery. On January 15, 2017, [Appellant] left Fresh Start and never turned [sic]. Wanted cards were issued on January 30, 2017.

On March 17, 2017, [Appellant was arrested and charged at docket number CP-51-CR-0002951-2017 (2951-2017)] with possession with intent to deliver a controlled substance (PWID), an ungraded felony, after the Philadelphia Narcotics Enforcement Team saw [Appellant] sell marijuana to several buyers on Oxford Avenue. [Appellant] appeared before th[e trial c]ourt on September 20, 2017[,] and pled guilty to this charge. Per his negotiated plea agreement, th[e trial c]ourt sentenced him to [six] to 23 months['] county incarceration plus [three] years['] reporting probation. That same day, th[e trial c]ourt conducted a violation hearing related to [docket number 287-2016]. Th[e trial c]ourt found him in both technical and direct violation for absconding from Fresh Start and pleading guilty to PWID. Th[e trial c]ourt revoked his probation and sentenced him to 11½ to 23 months['] county incarceration plus [three] years['] reporting probation, with credit for time served, to run concurrently with his [] sentence [at docket number 2951-2017. Appellant] was ordered to enroll in drug treatment, and upon release, continue to attend outpatient drug treatment through TREE,[1] seek and maintain employment, stop using and selling drugs, and stay out of trouble with the law. [Appellant] was further ordered to pay all applicable costs and fines at a rate of $25 per month. Th[e trial court] warned [Appellant] that he would receive a state sentence if he violated his probation again.

---

1 "TREE" is an acronym for Teach Recovery Education Empowerment, an intensive outpatient program in Philadelphia.

On April 24, 2018, [Appellant] was granted early parole after he completed drug treatment at Hoffman Hall,[2] with the condition that he must comply with all terms and conditions of his sentence. [Appellant] immediately absconded from supervision and wanted cards were issued on May 22, 2018. On July 3, 2018, [Appellant] was apprehended by authorities.

On July 24, 2018, [Appellant] appeared before th[e trial c]ourt for his second violation hearing. First, th[e trial c]ourt reviewed [Appellant's] criminal history since his original guilty plea in 2016 and incorporated the probation summary into the record by reference. [Appellant's] probation officer recommended revocation and incarceration.

Defense counsel stated that [Appellant] had a serious drug problem and lacked the ability to address it from the street due to lack of structure. She argued that 47-y[ea]r-old [Appellant] lacked the "emotional maturity" necessary to make good decisions. She recommended that th[e trial c]ourt order [Appellant] to undergo a [f]orensic [i]ntensive [r]ecovery (FIR) evaluation and sentence him to county jail with subsequent parole to a FIR program.

The Commonwealth stated that consistent with the new policies of the District Attorney's Office regarding technical violations, he recommended a sentence of 6 to 12 months [of] county incarceration.

Next, [Appellant] spoke on his own behalf. He stated that he started freebasing when he was in the 7th grade and that he was unable to adapt to living outside of prison. He stated when he was high, he had "no spiritual will" and acknowledged that he had "kind of set myself up at this point" for a state prison sentence.

Th[e trial c]ourt found [Appellant] in technical violation for absconding from supervision and not complying with any of the terms and conditions of his sentence. Th[e trial c]ourt terminated [Appellant's] parole and revoked his probation. [Appellant] was sentenced to [three and one-half to seven

_____

[2] Hoffman Hall is a Philadelphia residential reentry center.

years'] state incarceration [at docket number 2951-2017], and [two to four years'] state incarceration [at docket number 287-2016], to run concurrently with one another, for an aggregate sentence of [three and one-half to seven years'] state incarceration. Th[e trial c]ourt recommended that [Appellant] serve his sentence at SCI-Chester or SCI-Phoenix so that he could successfully complete drug treatment. Th[e trial c]ourt ordered [Appellant] to complete drug treatment and job training while in jail, and upon release, seek and maintain employment, undergo random urinalysis, and pay costs and fines at a rate of $25 per month. Th[e trial c]ourt stated that this sentence was absolutely necessary to vindicate the authority of the court.

Trial Court Opinion, 12/12/2018, at 2-4 (citations omitted).

On July 26, 2018, [Appellant] filed a "petition to vacate and reconsider [s]entence" (post-sentence motion). On August 13, 2018, Appellant filed two separate notices of appeal[3] to this Court pursuant to our Supreme Court's holding in **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018) (holding that failure to file separate notices of appeal from a single order resolving issues on more than one lower court docket will result in quashal of

---

[3] We recognize that Appellant filed his notice of appeal before the trial court ruled on his post-sentence motion. In fact, the docket reveals that, as of the date of this memorandum, the trial court has yet to rule on his post-sentence motion and no order has been entered denying the motion by operation of law. Because of this, the Commonwealth argues that Appellant failed to preserve his sentencing issue because he deprived the trial court of jurisdiction when he filed his appeal while his post-sentence motion was pending. **See** Commonwealth's Brief at 9-10. However, pursuant to our Rules of Criminal Procedure, a motion to modify a sentence imposed following revocation of probation does not toll the appeal period. Pa.R.Crim.P. 708(E). Thus, Appellant was required to file his notice of appeal before the 30-day appeal period lapsed, despite the fact that the trial court had yet to address his motion. Therefore, because Appellant timely filed his notice of appeal within thirty days of the imposition of sentence as required by Rule 708, the appeal herein is ripe for our review.

the appeal). Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

On appeal, Appellant argues that the trial court "abused its discretion, and violate[d] general sentencing principles when," it imposed a sentence that

> was manifestly excessive and unreasonable, [and] surpassed what was required to protect the public, where the court failed to adequately examine and investigate [Appellant's] background, character and rehabilitative needs, failed to state sufficient reasons of record for the sentence which was well beyond what was necessary to foster [Appellant's] rehabilitation and failed to comply with the requirements of [42 Pa.C.S.] § 9771(c)[.]

Appellant's Brief at 4.

Appellant challenges the discretionary aspects of his sentence. We consider his issue mindful of the following. It is within this Court's scope of review to consider challenges to the discretionary aspects of an appellant's sentence in an appeal following a revocation of probation. ***Commonwealth v. Ferguson***, 893 A.2d 735, 737 (Pa. Super. 2006).

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.
>
> * * *
>
> When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should

- 5 -

refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation.

***Commonwealth v. Antidormi***, 84 A.3d 736, 760-61 (Pa. Super. 2014)

(internal citations and quotation marks omitted).

> An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:
>
> > (1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

***Commonwealth v. Samuel***, 102 A.3d 1001, 1006-07 (Pa. Super. 2014) (some citations omitted).

Here, Appellant timely filed a notice of appeal after preserving the issue by filing a post-sentence motion to modify his sentence. Further, Appellant's brief contains a statement pursuant to Pa.R.A.P. 2119(f). Thus, we now consider whether Appellant has raised a substantial question. Here, Appellant claims the trial court did not address "the criteria for total confinement, the character of [Appellant] and the circumstances of the crime which sentence was being imposed." Appellant's Brief at 10 (footnote omitted).

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. ***Commonwealth v. Paul***, 925 A.2d 825, 828 (Pa. Super. 2007). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. Griffin***, 65 A.3d 932, 935 (Pa. Super. 2013) (citation and quotation marks omitted).

Upon review, we find Appellant has raised a substantial question by presenting a plausible argument that his sentence is contrary to the fundamental norms which underlie the sentencing process. ***See Commonwealth v. Parlante***, 823 A.2d 927, 929 (Pa. Super. 2003) (finding that Parlante raised a substantial question by arguing that "the trial court imposed a sentence that is grossly disproportionate to her crimes and failed to consider her background or nature of offenses and provide adequate reasons on the record for the sentence"). ***See also Commonwealth v. Schutzues***, 54 A.3d 86, 98 (Pa. Super. 2012) ("An argument that the trial court imposed an excessive sentence to technical probation violations raises a substantial question."). Accordingly, we proceed to address the merits of Appellant's claim.

Regarding sentences imposed following the revocation of probation, we observe the following.

The imposition of sentence following the revocation of probation is vested within the sound discretion of the trial court, which, absent an abuse of that discretion, will not be disturbed on appeal. An abuse of discretion is more than an error in judgment—a sentencing court has not abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

In determining whether a sentence is manifestly excessive, the appellate court must give great weight to the sentencing court's discretion, as he or she is in the best position to measure factors such as the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance, or indifference.

Upon revoking probation, a sentencing court may choose from any of the sentencing options that existed at the time of the original sentencing, including incarceration. [U]pon revocation [of probation] ... the trial court is limited only by the maximum sentence that it could have imposed originally at the time of the probationary sentence. However, 42 Pa.C.S.[] § 9771(c) provides that once probation has been revoked, a sentence of total confinement may only be imposed if any of the following conditions exist[s]:

(1) the defendant has been convicted of another crime; or

(2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or

(3) such a sentence is essential to vindicate the authority of the court.

In addition, in all cases where the court resentences an offender following revocation of probation ... the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed [and f]ailure to comply with these provisions shall be grounds for vacating the sentence or resentence and

resentencing the defendant. A trial court need not undertake a lengthy discourse[4] for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender.

***Commonwealth v. Colon***, 102 A.3d at 1033, 1044 (Pa. Super. 2014) (citations and quotation marks omitted).

Moreover, in addition to these considerations, a trial court must also consider the factors set forth in subsection 9721(b)[5] when imposing a sentence following the revocation of probation. ***Commonwealth v. Derry***, 150 A.3d 987, 995 (Pa. Super. 2016).

---

[4] As our Supreme Court has explained:

Simply put, since the defendant has previously appeared before the [trial] court, the stated reasons for a revocation sentence need not be as elaborate as that which is required at initial sentencing. The rationale for this is obvious. When sentencing is a consequence of the revocation of probation, the trial judge is already fully informed as to the facts and circumstances of both the crime and the nature of the defendant[.]

***Commonwealth v. Pasture***, 107 A.3d 21, 28 (Pa. 2014).

[5] That subsection provides, in relevant part, that when imposing a judgment of sentence,

the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

42 Pa.C.S. § 9721(b).

Instantly, Appellant contends that the trial court abused its discretion by: (1) imposing an excessive sentence without careful consideration of "the factors as set forth in the [s]entencing [c]ode[;]" (2) failing to consider the technical nature of Appellant's violation, his long-standing drug abuse, and rehabilitative needs; and (3) failing to provide sufficient rationale for a sentence of total confinement for the technical violation committed. Appellant's Brief at 10, 17-18.

Upon review of the certified record and applicable filings, we find Appellant's claim without merit. In its opinion to this Court, the trial court thoroughly addressed Appellant's arguments as follows.

> In the case at bar, th[e trial c]ourt properly sentenced [Appellant] to an aggregate term of [three and one-half to seven years'] state incarceration after finding him in technical violation of his probation. This sentence was within the statutory limits and was reasonable after considering all relevant factors. … [T]he length of incarceration was solely within th[e trial c]ourt's discretion and was limited only by the maximum sentence that could have been imposed at the original sentencing. Under Pennsylvania law, the maximum sentence for [PWID], an ungraded felony, is 10 years['] incarceration, a $100,000 fine, or both. 35 Pa.C.S. 780-113(f)(1.1). The maximum sentence for [r]obbery, graded as a felony of the third degree, is [seven] years, $15,000 fine, or both. Thus, th[e trial c]ourt could have sentenced [Appellant] up to a maximum aggregate sentence of 17 years, minus credit for time [Appellant] already served in prison. Th[e trial c]ourt sentenced [Appellant] to an aggregate term of [three and one-half to seven years'] state incarceration. This was well within the statutory limits and was a reasonable exercise of th[e trial c]ourt's discretion in light of [Appellant's] continued substance abuse, absconding from supervision, and failure to show any meaningful growth and progress towards rehabilitation.

Indeed, th[e trial c]ourt had tried to allow [Appellant] to get drug treatment through county inpatient and outpatient programs and [Appellant] was not successful. After his initial appearance before th[e trial c]ourt where he pled guilty to robbery, [Appellant] only served six days and then was released on parole. He later entered drug treatment at Eagleville Hospital, and upon completion of a 30 day program, was released to a recovery house, after which he absconded. His whereabouts remained unknown for the next two months until he was arrested and charged with PWID. … Instead of using this opportunity to turn his life around and get the substance abuse treatment he needed, [Appellant] absconded from supervision as soon as he was released on parole. Each time [Appellant] was released from custody, he immediately thumbed his nose at th[e trial c]ourt and continued doing whatever he wanted to do, namely abscond from supervision and continue using drugs.

Furthermore, th[e trial c]ourt properly considered the factors set forth in [section] 9721: the protection of the public, the gravity of [Appellant's] offense in relation to the impact on the victim and the community, and his rehabilitative needs. As discussed above, since his original guilty plea in 2016, th[e trial c]ourt had given [Appellant] multiple chances to rehabilitate himself through county parole, county probation, county incarceration, and inpatient/outpatient drug treatment programs, including Eagleville Hospital and Hoffman Hall for treatment. Unfortunately, [Appellant] once again failed to take his sentence seriously and absconded from supervision and continued to use drugs. Revocation and a state sentence was an appropriate sentence under the circumstances in order to vindicate the authority of the [c]ourt. In order to make this determination, th[e trial c]ourt considered [Appellant] conduct since his original guilty plea in 2016, the probation officer's summary and recommendation for revocation and incarceration, argument from defense counsel and the Commonwealth, and [Appellant's] own allocution. As he was explaining why he believed he failed at probation, parole, and outpatient treatment programs, [Appellant] admitted that he did not know how to "function socially outside of incarceration." Defense counsel argued that [Appellant] was unable to make good decisions without the structure of incarceration and that his addiction was "running his life." After taking all of this into consideration, th[e trial c]ourt found it appropriate to impose a [three and one-half to seven] year state sentence, with orders that [Appellant] receive drug

- 11 -

treatment while incarcerated. Th[e trial c]ourt stated, "So [I a]m sentencing you to a state sentence so you can take the sentence [seriously] this time and your drug treatment seriously this time. I am recommending SCI Chester because they have a good drug treatment program, but I think they have a good program at SCI Phoenix, too. So if you take your own treatment seriously this time, you will be better when you get out." … [T]here is no requirement that th[e trial c]ourt impose the "minimum possible sentence." Rather, based upon [Appellant's] ongoing failure to comply with the terms and conditions of probation as well as his serious drug problem that had yet to be adequately addressed, th[e trial c]ourt found it appropriate to sentence [Appellant] to a term of state incarceration.

[Appellant also] argues that a sentence of total confinement violated 42 Pa.C.S. § 9771(c)(3) and the fundamental norms underlying the sentencing process. This claim is without merit. As discussed above, once probation or parole has been revoked, a sentence of total confinement may be imposed if any of the following conditions exist: the defendant has been convicted of another crime; the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or, such a sentence is essential to vindicate the authority of court. Here, this sentence was absolutely necessary to vindicate the authority of the [c]ourt.

[Appellant] never took his sentence seriously and thumbed his nose at th[e trial c]ourt by absconding from supervision at every opportunity. He continued to use and sell drugs, and never made any progress towards completing any of the terms and conditions of his sentence. As th[e trial c]ourt stated at the violation hearing, "This sentence is absolutely necessary to vindicate the authority of the [c]ourt. You had two opportunities to get yourself clean and with this [c]ourt sending you to Hoffman Hall. Hoffman Hall has a great drug treatment program, but you decided not to follow up with it yourself." Instead of attending drug treatment and working towards achieving and maintaining sobriety, [Appellant] decided to disregard th[e trial c]ourt's orders and do whatever he wanted to do. Thus, th[e trial c]ourt properly sentenced [Appellant] to a term of total confinement in order to vindicate the authority of the court.

Trial Court Opinion, 12/12/2018, at 6-9 (some citations and quotation marks omitted).

Furthermore, the trial court set forth the following rationale at the time of sentencing.

> Sir, I find you to be in technical violation for absconding from supervision and not doing anything else that I ordered you to do because you're supposed to be looking for a job and maintaining your sobriety.
>
> * * *
>
> [Y]ou've been using drugs for a long time and every time you get out you got some drug treatment and you don't follow up on it. That's your choice. [...] It is your personal choice that you and only you can make that you do not want to be a drug addict anymore. You can't blame anybody but yourself for the condition you're in.
>
> * * *
>
> Hopefully[,] this sentence will allow you to address all of your issues. [...] So I'm sentencing you to a state sentence so you can take the sentence [seriously] this time and take your drug treatment seriously this time.

N.T., 7/24/2018, at 13-15.

The record supports the foregoing. *See Id.* at 4-6 (reviewing on the record Appellant's history with the court beginning with his 2016 guilty plea); *Id.* at 12 (Appellant answering in the affirmative when the trial court asked if he recalled the court's warning at Appellant's previous revocation hearing that the trial court "was going to give [Appellant] a state sentence"

if Appellant appeared before the court again); *Id.* at 15 (recommending Appellant's sentence be served at a state correctional institution that has a "good drug treatment program[,]" in hopes Appellant would take his "drug treatment seriously this time"); *Id.* (finding the sentence "absolutely necessary to vindicate the authority of the court" after the trial court had provided previously opportunities for Appellant to reform and address his drug abuse to no avail).

In light of the foregoing, because the trial court's findings are supported by the record and evidence thoughtful considerations by the trial court about the specific needs of Appellant, we conclude that the trial court did not abuse its discretion in sentencing Appellant.[6] Probation has proven

---

[6] Lastly, we briefly address Appellant's reliance on *Parlante*, *supra* to support his argument that his sentence is excessive. In *Parlante*, Parlante was

> convicted of forgery for purchasing $1000.00 in merchandise on a stolen credit card [and] initially received probation. [Parlante] committed a series of technical violations, and also was arrested for drug possession and underage drinking. The trial court sentenced [Parlante] to four to eight years of incarceration on the forgery offenses. This Court concluded that the length of the prison sentence was excessive, given that [Parlante] never committed a violent crime and that most of her probation violations were technical.

*Schutzues*, 54 A.3d at 100. Additionally, the *Parlante* Court found that the trial court failed to consider mitigating factors, and focused "solely on the fact that [Parlante's] prior record indicated that it was likely that she would violate her probation in the future[.]" *Parlante*, 823 A.2d at 930. We find *Parlante* distinguishable from the instant matter for several reasons. First, unlike in *Parlante*, the record here clearly indicates that the trial court took

*(Footnote Continued Next Page)*

to be ineffective in rehabilitating Appellant, and a prison sentence is necessary to help Appellant with treatment as well as vindicate the authority of the court. *See Commonwealth v. Mouzon*, 812 A.2d 617, 620 (Pa. 2002) ("Traditionally, the trial court is afforded broad discretion in sentencing criminal defendants 'because of the perception that the trial court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.'") (citation omitted).

Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/16/19

*(Footnote Continued)* ————————

into account Appellant's rehabilitative needs and did not base Appellant's sentence solely on his prior record. Secondly, Appellant's underlying convictions are for robbery and PWID, as opposed to Parlante's forgery conviction. Lastly, the trial court warned Appellant of an impending state sentence at a prior revocation, should Appellant violate his probation yet again. Thus, we do not believe that this Court's holding in *Parlante* warrants the conclusion that Appellant's sentence is excessive.